# In the United States Court of Federal Claims

No. 18-795C
(Filed Under Seal:  September 13, 2018)
(Reissued for Publication:  September 18, 2018)*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |  |
|---|---|---|
| DYNANET CORPORATION, | * | |
| | * | |
| Plaintiff, | * | Postaward Bid Protest; RCFC 12(b)(1); |
| | * | Motion to Dismiss; Subject Matter |
| v. | * | Jurisdiction; RCFC 52.1; Cross-Motions |
| | * | for Judgment on the Administrative Record |
| THE UNITED STATES, | * | |
| | * | |
| Defendant. | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Albert B. Krachman, Washington, DC, for plaintiff.

Russell J. Upton, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

**SWEENEY**, Chief Judge

In this postaward bid protest, plaintiff Dynanet Corporation ("Dynanet") alleges that the contracting officer ("CO") improperly evaluated its proposal in connection with a solicitation issued by the United States General Services Administration ("GSA") for information technology services.  The crux of Dynanet's protest is that the CO erred by deducting points related to Dynanet's cost accounting system ("CAS") without contacting the Defense Contract Audit Agency ("DCAA") to verify whether Dynanet had an acceptable CAS.  The court is now presented with Dynanet's motion for judgment on the administrative record, defendant's motion to strike exhibits attached to Dynanet's motion, defendant's motion to dismiss for lack of subject matter jurisdiction, and defendant's cross-motion for judgment on the administrative record.  For the reasons explained below, the court grants defendant's motion for judgment on the administrative record and denies the other motions.

---

* The court initially issued this Opinion and Order under seal with instructions for the parties to propose any redactions.  The parties informed the court that no redactions were necessary to the substance of the Opinion and Order.

# I.  FACTUAL BACKGROUND

## A.  Solicitation

On June 20, 2016, the GSA issued solicitation QTA0016GBA000 to procure information technology services for the government.  Administrative R. ("AR") 4, 14.  Specifically, the GSA sought proposals for the Alliant 2 Small Business Governmentwide Acquisition Contract, a multiple-award, indefinite-delivery, indefinite-quantity contract.  Id. at 4.  An awardee under the solicitation would become eligible to receive task orders under the contract.  Id. at 262-63.  The GSA specified that proposals were due by October 7, 2016.  Id. at 258.

## 1.  Proposal Format and Contents

The GSA required that offerors submit their proposals in seven volumes—general; responsibility; cost-price; past performance; relevant experience; organizational risk assessment; and systems, certifications and clearances.  Id. at 109.  Within the general volume, offerors were required to include, among other items, a completed copy of the Document Verification and Self Scoring Worksheet ("Scoring Worksheet").  Id.  The GSA also instructed offerors to submit a copy of the completed Scoring Worksheet.  Id.  In the Scoring Worksheet, offerors were required to claim points for meeting specific criteria in the solicitation.  See id. at 116.  For every claimed point, an offeror was required to include supporting documentation in the proposal showing that it met the relevant criteria.  Id.

Of particular import in Dynanet's protest, an offeror was entitled to claim 5500 points if it had an accounting system that was appropriate for determining costs applicable to a contract or order.  Id. at 135.  To substantiate these points, an offeror was required to "provide verification from the . . . [ ]DCAA[ ], Defense Contract Management Agency . . . , or any Cognizant Federal Agency . . . of an acceptable accounting system that has been audited and determined adequate for determining costs applicable to the contract or order in accordance with [Federal Acquisition Regulation] 16.301-3(a)(3)."  Id.  The parties agree that the GSA set forth three different ways for an offeror to provide the required verification.  Specifically, an offeror could submit (1) a Standard Form 1408 from the auditing agency, (2) a letter from the auditing agency stating unequivocally that the offeror met the requirements, or (3) a statement of certainty—a letter from the offeror averring that its accounting system satisfied the requirements.[1]  Id.  With regard to the last option, it was permitted only if the offeror was "certain that its accounting system ha[d] been audited and determined adequate."  Id.  An offeror expressing such certainty to the CO triggered the CO's obligation to contact the auditing agency to verify that the offeror's CAS was acceptable, and the GSA agreed that it would only deduct the 5500 points "[i]f after reasonable efforts the [CO was] unable to obtain audit verification from the [auditing agency]."  Id.

---

[1]  In the solicitation, the GSA did not explicitly require the submission of a "statement of certainty," but the GSA clearly contemplated some method of alerting the agency that the offeror was certain that its accounting system had been audited and determined adequate.  See AR 135. Furthermore, the parties agree that submitting a statement of certainty was the appropriate mechanism for notifying the GSA.

## 2.  Evaluation Process

The GSA explained in the solicitation that awardees would be selected based on which offerors presented the highest technically rated proposals with a fair and reasonable price.  Id. at 146.  For evaluating proposals, the GSA set forth a step-by-step review process for each proposal.  This process consisted of the following steps, which the CO was required to perform in the order noted below:

- Step One:  The CO preliminarily identifies the top eighty proposals by sorting all of the submissions from the highest score to the lowest score based on the offerors' Scoring Worksheets.  Id.  The CO then reviews the top eighty proposals in accordance with the following steps.

- Step Two:  For each proposal, the CO verifies that a support document exists for all of the evaluation elements included on the Scoring Worksheet.  Id. at 146-47.  Any discrepancies at this stage are treated as clarifications.  Id. at 147.

- Step Three:  The CO conducts an acceptability review to determine whether each offeror submitted all of the requested information for the general volume in the specified manner.  Id.  If a proposal does not pass the review, the proposal is replaced by the next highest scoring proposal that passes the acceptability review.  Id.

- Step Four:  The CO determines whether a support document substantiates every claimed point on the Scoring Worksheet.  Id.  If the claimed points are not substantiated, then (1) those points are deducted, (2) the proposals are resorted based on the revised score, and (3) the proposal is replaced if its new score is below the cutoff for the top eighty proposals.  Id.

- Step Five:  The CO evaluates whether the offeror proposed fair and reasonable pricing.  Id.  An offeror who fails to provide such pricing is eliminated from the competition.  Id.

The GSA explained that the process continues until the top eighty proposals (or more in the case of a tie for the last spot) were identified.  Id.  At that point, the CO would cease evaluations and award contracts to the offerors of those proposals.  Id.  Offerors were also informed that the GSA did not intend to hold discussions but would conduct clarifications as necessary.  Id. at 146.  As explained in the Source Selection Decision Memorandum, the GSA adhered to above process for evaluating proposals and did not hold discussions.  Id. at 466-68.

**B.  Dynanet's Proposal**

Dynanet timely submitted its proposal on October 7, 2016.  <u>Id.</u> at 490.  It claimed 70,400 points on the Scoring Worksheet, <u>id.</u> at 520, which included 5500 points for having an adequate CAS, <u>id.</u> at 519.  In support of the claimed points related to the CAS, Dynanet provided three documents.  The first document was a letter, a purported statement of certainty, in which Dynanet noted that it "received verbal confirmation from [its] DCAA representative that [Dynanet's] system has been approved and determined adequate for cost reimbursement accounting."  <u>Id.</u> at 1271.  Based on conversations with its DCAA representative, Dynanet also stated that it expected to "receive [the] final report[ ] the week of October 10, 2016 after final review by the DCAA Branch Manager."  <u>Id.</u>  The second document was an August 12, 2016 letter from the DCAA confirming Dynanet's request for an audit.  <u>Id.</u> at 1273-74.  The third document was a series of electronic-mail ("e-mail") messages between Dynanet and its DCAA representative that were exchanged between October 5 and 6, 2016.  <u>Id.</u> at 1275-84.  Those messages, which are presented below in chronological order, reflect:

- Dynanet inquiring whether, in advance of receiving the report, the DCAA could corroborate Dynanet's belief that it passed the audit.  <u>Id.</u> at 1278-79.

- Dynanet asking whether the DCAA could "verify via email (on letterhead if possible)" that Dynanet's accounting system had been audited and deemed adequate.  <u>Id.</u> at 1278.

- The DCAA representative responding that the DCAA could provide a response "next week when [the report] goes through final review."  <u>Id.</u> at 1276.

- Dynanet asking whether the DCAA representative could "confirm via email like [the representative] mentioned on the phone that Dynanet's accounting system has been deemed adequate, is awaiting final review and that the report will be completed and issued the week of October 10."  <u>Id.</u>

- The DCAA representative replying, apparently in reference to the representative's statement made on the phone:  "That was my mistake.  I asked Dave and he said not until the Branch Manager does the final review next week."  <u>Id.</u> at 1275.

- Dynanet seeking confirmation regarding the current status of the audit.  <u>Id.</u>

- The DCAA stating that "[t]he audit is in the final stages," the "manager will review it next week," and the "goal is to have everything completed Friday, October 14."  <u>Id.</u>

The CO reviewed Dynanet's proposal in accordance with the procedures noted above.  <u>Id.</u> at 1378-1400.  The CO reached the fourth step of the evaluation process:  verifying that the

support documents substantiated every claimed point on the Scoring Worksheet. See id. at 1378-79. At this step, without contacting the DCAA, the CO deducted 5500 points from Dynanet's score because it "claimed the points for having a [CAS] credential that was not validated." Id. at 1378. Specifically, the CO noted in the Technical Evaluation Summary that Dynanet

> did not provide evidence of an acceptable accounting system that has been audited and determined adequate for determining costs applicable to the contract. [Dynanet] provided a letter from DCAA dated August 12, 2016 that simply indicated that an audit request has been received. [Dynanet] also provided an [e-mail] string from DCAA dated October 6, 2016 (one day before the [bidding window] closed) where [the DCAA] stated that the audit was in its final stages with a goal of having it completed by October 14, 2016 (7 days after the [bidding window] closed).

Id. As a result of the deduction, Dynanet's score fell below the award cutoff; the CO, therefore, did not review other volumes in Dynanet's proposal because the loss of points "rendered the review academic." Id. at 1379.

On February 14, 2018, the GSA posted an award notice reflecting that the agency selected eighty-one awardees.[2] Id. at 480-88. Because Dynanet was not listed as an awardee, id., it promptly requested a debriefing, id. at 1498. In a March 9, 2018 debriefing letter, the CO explained why he deducted points and how those deductions placed Dynanet below the award cutoff. Id. at 1500-03. Specifically, the CO reiterated the explanation that he wrote in the Technical Evaluation Summary. Compare id. at 1378 (Technical Evaluation Summary), with id. at 1502 (debriefing letter).

After it received the debriefing letter, Dynanet filed a protest with the Government Accountability Office ("GAO"). Id. at 1843. The GAO dismissed the protest on May 22, 2018, because protests concerning the same procurement were pending before this court. Id. at 4077.

### C. Procedural History

Dynanet filed its bid protest with the court on June 4, 2018. In its complaint, Dynanet alleges that the solicitation should be interpreted as permitting a statement of certainty, the CO failed to comply with the terms of the solicitation, and the CO was equitably estopped from deducting the 5500 points. Based on those allegations, Dynanet requests that the court declare that the CO erred when he evaluated its proposal, direct the CO to award it a contract (or reevaluate its proposal in accordance with the terms of the solicitation), and award costs. Pursuant to the schedule they proposed, the parties briefed cross-motions for judgment on the administrative record. Dynanet attached four exhibits to its motion:

---

[2] The agency exceeded its stated target of eighty awardees as a result of a four-way tie for the seventy-eighth position. See AR 1506.

- A DCAA report to Congress addressing the agency's delays in processing audits;

- A Freedom of Information Act ("FOIA") request submitted to the DCAA in which Dynanet sought any records of communications between the DCAA and the GSA that referenced Dynanet;

- A FOIA response by the DCAA in which it stated that it had no responsive records; and

- A declaration from a Dynanet executive in which he described receiving verbal confirmation from a DCAA representative that Dynanet had passed its audit before the proposal submission deadline. The executive included DCAA's October 20, 2016 audit report for Dynanet as an attachment to the declaration.

Defendant, along with its cross-motion for judgment on the administrative record, also moves to (1) dismiss Dynanet's complaint for lack of subject matter jurisdiction and (2) strike the exhibits that Dynanet attached to its motion and the related portions of its brief. The court held oral argument on September 12, 2018. During oral argument, Dynanet agreed to withdraw the FOIA request, the FOIA response, and the declaration (but not the DCAA audit attached to the declaration) in response to defendant's motion to strike. The parties' respective motions are now ripe for adjudication.

## II. LEGAL STANDARDS

### A. Motion to Dismiss

In ruling on a motion to dismiss a complaint pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"), the court generally assumes that the allegations in the complaint are true and construes those allegations in the plaintiff's favor. Trusted Integration, Inc. v. United States, 659 F.3d 1159, 1163 (Fed. Cir. 2011). The plaintiff bears the burden of proving, by a preponderance of the evidence, that the court possesses subject matter jurisdiction. Id. The allegations in the complaint must include "the facts essential to show jurisdiction." McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936). And, if such jurisdictional facts are challenged in a motion to dismiss, the plaintiff "must support them by competent proof." Id.; accord Land v. Dollar, 330 U.S. 731, 735 n.4 (1947) ("[W]hen a question of the District Court's jurisdiction is raised, . . . the court may inquire by affidavits or otherwise, into the facts as they exist."). If the court finds that it lacks subject matter jurisdiction, it must, pursuant to RCFC 12(h)(3), dismiss the complaint.

### B. Motion for Judgment on the Administrative Record

In ruling on motions for judgment on the administrative record pursuant to RCFC 52.1(c), "the court asks whether, given all the disputed and undisputed facts, a party has met its

burden of proof based on the evidence in the record." A & D Fire Prot., Inc. v. United States, 72 Fed. Cl. 126, 131 (2006) (citing Bannum, Inc. v. United States, 404 F.3d 1346, 1356 (Fed. Cir. 2005)).  Because the court makes "factual findings . . . from the record evidence," judgment on the administrative record "is properly understood as intending to provide for an expedited trial on the administrative record." Bannum, 404 F.3d at 1356.

## C.  Bid Protests

When adjudicating the merits of a motion for judgment on the administrative record, the court reviews challenged agency actions pursuant to the standards set forth in 5 U.S.C. § 706.  28 U.S.C. § 1491(b)(4) (2012).  Specifically, "the proper standard to be applied in bid protest cases is provided by 5 U.S.C. § 706(2)(A):  a reviewing court shall set aside the agency action if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" Banknote Corp. of Am. v. United States, 365 F.3d 1345, 1350 (Fed. Cir. 2004).  Under this standard, the court

> may set aside a procurement action if "(1) the procurement official's decision
> lacked a rational basis; or (2) the procurement procedure involved a violation of
> regulation or procedure."  A court reviews a challenge brought on the first ground
> "to determine whether the contracting agency provided a coherent and reasonable
> explanation of its exercise of discretion, and the disappointed bidder bears a
> heavy burden of showing that the award decision had no rational basis."  "When a
> challenge is brought on the second ground, the disappointed bidder must show a
> clear and prejudicial violation of applicable statutes or regulations."

Centech Grp., Inc. v. United States, 554 F.3d 1029, 1037 (Fed. Cir. 2009) (citations omitted) (quoting Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332-33 (Fed. Cir. 2001)); accord Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1058 (Fed. Cir. 2000) ("The arbitrary and capricious standard . . . requires a reviewing court to sustain an agency action evincing rational reasoning and consideration of relevant factors.").

Procurement officials "are 'entitled to exercise discretion upon a broad range of issues confronting them' in the procurement process." Impresa, 238 F.3d at 1332 (quoting Latecoere Int'l, Inc. v. U.S. Dep't of the Navy, 19 F.3d 1342, 1356 (11th Cir. 1994)).  Thus, the court's review of a procuring agency's decision is "highly deferential." Advanced Data Concepts, 216 F.3d at 1058; see also Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971) ("The court is not empowered to substitute its judgment for that of the agency.").  Furthermore, a "protestor's burden of proving that the award was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law is greater [in negotiated procurements] than in other types of bid protests." Galen Med. Assocs., Inc. v. United States, 369 F.3d 1324, 1330 (Fed. Cir. 2004).  And, when a contract is to be awarded on a "best value" basis, procurement officials have "even greater discretion than if the contract were to have been awarded on the basis of cost alone." Id. (citing E.W. Bliss Co. v. United States, 77 F.3d 445, 449 (Fed. Cir. 1996) ("Procurement officials have substantial discretion to determine which proposal represents the best value for the government.")).

# III.  ANALYSIS

## A.  Motion to Dismiss

Defendant first moves to dismiss Dynanet's protest pursuant to the rule set forth in <u>Blue & Gold Fleet, L.P. v. United States</u> that "[a] party who has the opportunity to object to the terms of a procurement solicitation containing a patent error and fails to do so prior to the close of the bidding process waives its ability to raise the same objection subsequently in a protest action in the Court of Federal Claims." 492 F.3d 1308, 1313 (Fed. Cir. 2007).  Defendant frames Dynanet's protest as a challenge to the reasonableness of the solicitation requirement that an offeror can receive 5500 points for having a certified CAS only if its audit report is completed before the proposal submission deadline.  Based on that understanding of Dynanet's protest, defendant argues that Dynanet could only bring its challenge before the deadline for submitting proposals because the GSA's purported error in the solicitation—unreasonably requiring an audit by the proposal submission deadline—was patent, and Dynanet's failure to do so results in a waiver.  Dynanet counters that it is not challenging the reasonableness of the solicitation terms but rather the interpretation of them, which it asserts is properly the subject of a postproposal-deadline protest.

Defendant's argument is not persuasive.  The rule in <u>Blue & Gold Fleet</u> is not applicable here because Dynanet does not challenge the reasonableness of the purported requirement to have a completed report by the proposal submission deadline.  <u>See</u> Compl. ¶¶ 1-10 (protest summary).  Instead, Dynanet pleads that the solicitation does not contain such a condition, the CO's interpretation of the solicitation as containing such a requirement is unreasonable, and the CO failed to follow the evaluation procedures set forth in the solicitation.  <u>See, e.g.</u>, <u>id.</u> ¶ 7 (alleging that the CO did not comply with the terms of the solicitation when he did not contact the DCAA after Dynanet submitted its statement of certainty); <u>id.</u> ¶¶ 36, 38 (alleging that the GSA relies on a "strained" interpretation of the solicitation and disregards the statement-of-certainty option); <u>see also id.</u> ¶ 10 (alleging that the GSA's "interpretation makes no sense").  Simply stated, the court denies defendant's motion to dismiss because Dynanet is challenging the CO's evaluation of its proposal rather than the terms of the solicitation, and it has not waived the right to bring such a protest.  <u>See</u> <u>Overstreet Elec. Co. v. United States</u>, 59 Fed. Cl. 99, 116 (2003) (declining to require that the offeror file its protest before the proposal submission deadline when its challenge was "not a disagreement over the fairness of the terms of the solicitation . . . but a disagreement on how the standards of the solicitation were interpreted and applied, that is, a disagreement over the evaluation itself").

## B.  Cross-Motions for Judgment on the Administrative Record

With regard to the merits of its protest, Dynanet argues that the CO failed to comply with the terms of the solicitation and was equitably estopped from deducting the CAS points.  Defendant responds that the CO adhered to the process set forth in the solicitation and was not estopped from deducting the points.

### 1.  Compliance With the Solicitation

Dynanet initially argues that the CO failed to comply with the provision in the solicitation that permitted offerors to substantiate their CAS points by submitting a statement of certainty.  In support of that argument, Dynanet contends that the CO failed to consider that an offeror could submit a statement of certainty to substantiate its CAS points.  Specifically, Dynanet avers that the CO's explanation that it did not provide evidence of an acceptable CAS reflects his incorrect belief that an offeror was required to provide the audit report or an agency letter with its proposal.  Dynanet further asserts that the CO improperly concluded that Dynanet's statement of certainty was insufficient to trigger the CO's obligation to contact the DCAA regarding Dynanet's audit status before deducting the CAS points.  Defendant counters that the CO complied with the terms of the solicitation because he considered Dynanet's purported statement of certainty but determined that it did not trigger his obligation to contact the DCAA to verify Dynanet's audit status.  Indeed, defendant contends that the CO had no such obligation because he knew the statement was false based on other materials in the proposal documenting Dynanet's knowledge that its audit was incomplete at the proposal submission deadline.

"[A] fundamental tenet of procurement law [is] that proposals must be evaluated in accordance with the terms of the solicitation."  Ashbritt, Inc. v. United States, 87 Fed. Cl. 344, 374 (2009).  Contrary to Dynanet's argument, the record reflects that the CO did not run afoul of that tenet when considering whether Dynanet substantiated its claim to the CAS points.  As an initial matter, the CO's statement that Dynanet was not entitled to the CAS points because it failed to provide the necessary "evidence" does not suggest that he was conditioning the points on Dynanet's submission of an audit report or agency letter.  Indeed, the solicitation contemplated that evidence of an acceptable CAS could take three forms:  a report, an agency letter, or a statement of certainty (with the latter being different in that it would not be dispositive of the issue).  See AR 135.  The CO's reference to "evidence," therefore, does not suggest an inaccurate interpretation of the solicitation.  Moreover, the CO's willingness to accept a statement of certainty is evident from his explanation for why he deducted the points, which involved a discussion of evidence that is germane only to that method of verification.  Specifically, the CO highlighted e-mail messages between the DCAA and Dynanet in which they acknowledged that Dynanet's audit (not just the report) was incomplete and would not be complete until after the proposal submission deadline.  Those e-mail messages are only relevant to determining whether Dynanet could form the requisite certainty about its CAS, and the CO had no reason to acknowledge those messages if he was merely considering whether Dynanet submitted an audit report or an agency letter.  Simply stated, the CO did not construe the solicitation as requiring an offeror to submit an audit report or agency letter; he recognized that a statement of certainty was sufficient.[3]

---

[3]  Because the CO interpreted the solicitation as permitting a statement of certainty, which is the interpretation advocated for by Dynanet, there is no need to address Dynanet's assertion that the solicitation contained a latent ambiguity on that issue that should be resolved in its favor.

The CO's explanation for why he deducted the points is also relevant to evaluating Dynanet's other assertion, which is that the CO was willing to accept statements of certainty but erred by not contacting the DCAA despite Dynanet submitting the necessary statement.  The CO, pursuant to solicitation, was required to contact the DCAA to obtain audit verification before he deducted the CAS points only "if an Offeror[] . . . is certain its accounting system had been audited and determined adequate . . . ."  Id. (emphasis added).  Even assuming that an offeror could form this belief without an audit report,[4] the CO explained why Dynanet could not have reasonably formed such a belief despite attesting to such in a letter included with its proposal.[5]  Specifically, the CO observed that Dynanet submitted e-mail messages in which the DCAA informed Dynanet that its "audit is in the final stages" and would hopefully be completed seven days after the proposal submission deadline.  Id. 1275 (emphasis added).  The same batch of e-mail messages also reflects that Dynanet was aware that the DCAA had yet to make an adequacy determination.[6]  See id. at 1275-76.  It may very well be that Dynanet and the DCAA used imprecise or colloquial language in their e-mail messages; the DCAA might have intended to convey (and Dynanet might have understood) that the audit and adequacy determination had been completed, and the report was the only remaining step.  But the e-mail messages do not include any such statements.  Rather, the messages make clear the DCAA's position and Dynanet's understanding:  the audit (not just the report) and the adequacy determination would be completed after the proposal submission deadline.  Under these facts, the CO reasonably decided that Dynanet was not actually certain its accounting system had been audited and determined adequate.  Thus, the CO was not obligated to contact the DCAA to verify the state of Dynanet's audit and adequacy determination, and Dynanet fails to otherwise demonstrate that the CO did not comply with the terms of the solicitation.

## 2.  Equitable Estoppel

Dynanet also argues that the CO was equitably estopped from deducting the 5500 points.  Specifically, Dynanet asserts that (1) the GSA misled offerors into believing that the CO, when

---

[4]  Dynanet argues that an offeror can be certain its accounting system was audited and determined adequate before the report memorializing those events is completed because the audit and adequacy determination purportedly occur before the report.  Defendant does not dispute Dynanet's statement regarding the sequence of events.  But the court need not, and therefore does not, decide whether an audit is completed before a report is issued because, as will be discussed below, the record supports the CO's conclusion that Dynanet did not even have a completed audit at the time it submitted its proposal.

[5]  The CO did not reference the letter while evaluating the proposal, but there is no reason to suspect that the CO disregarded the letter.  Indeed, the CO did not need to explicitly state the contents of the letter, especially given that his explanation of what was included with the proposal is a clear refutation of the letter's contents.

[6]  Although a DCAA representative told Dynanet over the phone that it had passed the audit and its accounting system had been determined adequate, the representative retracted that statement via an e-mail message before Dynanet submitted its proposal.

presented with a statement of certainty, would contact the auditing agency before deducting points; and (2) Dynanet detrimentally relied on the GSA's representation.  Defendant responds by arguing that equitable estoppel is not applicable here because Dynanet fails to establish affirmative misconduct by the CO or any other government official.

Equitable estoppel "is a judicial remedy by which a party may be precluded, by its own acts or omissions, from asserting a right to which it otherwise would have been entitled." Am. Airlines, Inc. v. United States, 77 Fed. Cl. 672, 679 (2007).  There are three elements to equitable estoppel:  "(1) misleading conduct, which may include not only statements and action but silence and inaction, leading another to reasonably infer that rights will not be asserted against it; (2) reliance upon this conduct; and (3) due to this reliance, material prejudice if the delayed assertion of such rights is permitted." Conner Bros. Const. Co. v. United States, 65 Fed. Cl. 657, 693 (2005).  Here, Dynanet does not prevail because it cannot show that the GSA misled offerors.  Indeed, there is no dispute that the solicitation obligated the CO to contact the auditing agency when an offeror possessed the requisite certainty.  But, as explained above, the CO reasonably concluded that he was not obligated to contact the DCAA because Dynanet could not believe that its accounting system had been audited and determined adequate.  Simply stated, the GSA did not mislead Dynanet; the CO gave appropriate consideration to the disputed solicitation provision and appropriately concluded it was not applicable.

### 3.  Summary

Dynanet fails to demonstrate that the CO erred or that its protest should otherwise be sustained.  In reaching this conclusion, the court did not consider the non-withdrawn exhibits Dynanet attached to its motion because the materials were either duplicative of facts already in the record or not germane to the analysis.  Because Dynanet does not succeed on the merits of its protest, it is not entitled to costs or injunctive relief.  See ARxIUM, Inc. v. United States, 136 Fed. Cl. 188, 198 (2018) ("A lack of success on the merits . . . obviously precludes the possibility of an injunction."); Q Integrated Cos. v. United States, 132 Fed. Cl. 638, 642-43 (2017) ("A protestor thus must prevail on the merits at least in part before the court can grant an award of bid preparation and proposal costs.").

### IV.  CONCLUSION

For the reasons discussed above, the court **DENIES** Dynanet's motion for judgment on the administrative record, **DENIES** defendant's motion to dismiss, **GRANTS** defendant's cross-motion for judgment on the administrative record, and **DENIES** as moot defendant's motion to strike the nonwithdrawn
exhibits attached to Dynanet's motion.  Dynanet's protest is **DISMISSED.**  No costs.  The clerk shall enter judgment accordingly.

The court has filed this ruling under seal. The parties shall confer to determine proposed redactions to which all the parties agree.  Then, by **no later than Thursday, September 27, 2018,** the parties shall file a joint status report indicating their agreement with the proposed

11

redactions, **attaching a copy of those pages of the court's ruling containing proposed redactions, with all proposed redactions clearly indicated**.

**IT IS SO ORDERED.**

<u>s/ Margaret M. Sweeney</u>
MARGARET M. SWEENEY
Chief Judge